184 N.J. Super. 615 (1981)
446 A.2d 1257
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH ALEXANDER, DEFENDANT.
Superior Court of New Jersey, Law Division Passaic County.
Decided October 15, 1981.
*616 Joseph A. Falcone, Passaic County Prosecutor, for the State (Patrick Caserta, Assistant Prosecutor, appearing).
Robert B. Cherry, for defendant.
HUMPHREYS, J.S.C.
This case presents a novel question concerning the scope of the so-called Graves Act, L. 1981, c. 31, N.J.S.A. 2C:43-6c.[1]
The Graves Act provides for mandatory minimum sentences and parole ineligibility for those committing certain crimes while using or possessing a firearm. The question here is whether the statute applies to an accomplice who did not use or possess the firearm. My holding is that it does.
In March 1981 four persons, including defendant Alexander, agreed to rob Dr. Hazelkorn, a Paterson physician. They accosted the doctor as he left his office. One of the robbers, not Alexander, had a handgun. The doctor threw his briefcase at the robbers. Alexander picked it up and fled. The remaining trio forced the doctor to the ground and robbed him at gun point. They then shoved him into his own car and drove toward New York City. On the way they talked about killing him. At the George Washington Bridge toll booth Dr. Hazelkorn jumped out of the car and escaped.
Alexander admitted to the police and at trial that he had agreed to rob Dr. Hazelkorn. He asserts, however, that he did not know that a gun would be used or that the doctor would be abducted. He also contends that he fled before his confederate *617 produced the gun. Alexander claims that he was unaware that a gun had been used until he read about the robbery the next day in the newspaper.

I
Alexander was convicted of armed robbery, a first degree crime. See N.J.S.A. 2C:15-1b. He faces a maximum prison sentence of 20 years. The court could require that up to one-half of that term be served without parole. If the Graves Act were applicable, the court would be required to impose a prison term and to provide that at least one-third and no less than three years of the term be served without parole. N.J.S.A. 2C:43-6c.
The Graves Act applies to a person who "while in the course of committing or attempting to commit [certain crimes], including the immediate flight therefrom, used or was in possession of a firearm....".
The first question is whether Alexander "used" or "possessed" the firearm. At the hearing required by the Graves Act, N.J.S.A. 2C:43-6d, both counsel agreed that further testimony was unnecessary and that the court could find the facts based on the trial testimony.
The State seeks a mandatory minimum sentence and, therefore, has the burden of proof to the "satisfaction" of the court. N.J.S.A. 2C:1-13d(1) and (2). Undisputed is that Alexander was aware that there would be a robbery and that he agreed to and did participate in the robbery; past that, the evidence is susceptible to differing conclusions. However, I am not satisfied that Alexander personally "used" or "possessed" the firearm, or that he was aware before or during the robbery that a firearm would be used in the robbery. (My original analysis of the evidence and my reasons for these and other fact findings are omitted).
Hence, I find that Alexander did not personally use the gun nor was he in actual possession of the gun. Constructive possession requires control, State v. Reyes, 98 N.J. Super. 506 (App.Div. *618 1968), or the ability to control, State v. Brown, 67 N.J. Super. 450 (App.Div. 1961). Neither is present here. Since Alexander did not personally possess or use the gun, he does not come within the literal language of the Graves Act.

II
Is Alexander liable under the Graves Act as an accomplice? An accomplice is defined under the Code as one who, for the purpose of promoting or facilitating the commission of an offense, aids or agrees or attempts to aid another in planning or committing it. N.J.S.A. 2C:2-6c(1)(b). The evidence in this case overwhelmingly establishes that Alexander was an accomplice. He agreed to and did participate in the robbery. During the robbery he took and fled with the doctor's briefcase.
The jury was charged regarding Alexander's liability as an accomplice, and the jury convicted Alexander of armed robbery. The natural conclusion is that the jury found that Alexander was an accomplice in the robbery.
Alexander argues that the Graves Act be construed to exclude accomplices, pointing out that the statute relates only to one who "used or was in possession of a firearm ...," and that a criminal statute should be "strictly construed."
However, in State v. Maguire, 84 N.J. 508, 514 (1980), Chief Justice Wilentz pointed out that the new Code of Criminal Justice has "its own principles of construction which do not mention any rule of `strict construction' but rather, provide that where `the language (of the Code) is susceptible of differing constructions it shall be interpreted to further the general purposes stated in section 2C:1-2 and the special purposes of the particular provision involved." The task of the court, the Chief Justice said, "is to effectuate the legislative intent in light of the language used and the object sought to be achieved." Ibid.
Moreover, the principle of strict construction of penal statutes has certain limitations. In State v. Provenzano, 34 N.J. 318 (1961), the Court stated:

*619 The goal of the interpretative process is the intent of the Legislature. It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition. The rule that a penal statute should be strictly construed does not mean that a ridiculous result shall be reached because some ingenious path may be found to that end. Rather it means that a statute shall not be extended by tenuous interpretation beyond the fair meaning of its terms lest it be applied to persons or conduct beyond the contemplation of the Legislature. In part that rule also is designed to avoid surprise to the citizen who conscientiously seeks to stay within the law. [at 380]
Compare language in In re De Marco Suspension, 83 N.J. 25, 36 (1980).
In the present case we are dealing with an accomplice of armed robbers, not a conscientious citizen who is seeking to stay within the law. The central issue is whether the Legislature intended to permit accomplices of armed robbers to escape the penalties imposed upon their cohorts.
The "general purposes" of sentencing set forth in the Code are as follows:
(1) To prevent and condemn the commission of offenses;
(2) To promote the correction and rehabilitation of offenders;
(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;
(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;
(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;
(6) To differentiate among offenders with a view to a just individualization in their treatment; and
(7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders.
c. The provisions of the code shall be construed according to the import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved. [N.J.S.A. 2C:1-2b and c.]
The specific purpose of the Graves Act is obviously to increase the penalties and, therefore, deter commission of serious crimes when accomplished or accompanied by the use of firearms. Armed robbery is a most serious crime. A person who commits a robbery while armed with, or using or threatening the immediate *620 use of a deadly weapon, is guilty of a first degree crime. N.J.S.A. 2C:15-1b. An accomplice in such a robbery is guilty of a first degree crime to the same extent as the armed robber himself. N.J.S.A. 2C:2-6a and b(3).
The Graves Act was passed in response to the enormous increase in crime in recent years, especially violent crime committed with firearms. A few years ago Chief Justice Hughes described the crime epidemic in the following graphic language.
It is a regrettable fact that in modern day America personal security has diminished because of the threat of physical violence. Whether on subway, in bus terminal, on public street or in public park, in sheltered suburb as well as in urban ghetto, one feels the lurking threat of violence. Citizens are being attacked and robbed in broad daylight in the very shadow of State House, court house and other public buildings. There is a constant search for causes of this phenomenon. Some point to drugs and desperate crimes committed to satisfy addiction. Others blame juvenile violence whether from poverty, family breakdown, permissiveness or other factors. Still others stress the violence of the hard core predatory criminal who feasts on pain and hurt to his victims. Some indeed see as a cause the occasional excessive lenience of judges, or the inadequacy of law enforcement.
In the present context the cause is less important than the effect,  the obvious fact of modern life which is seen in the rise of violence in our society. [State v. Christener, 71 N.J. 55, 75 (1976)]
Later, in State in the Interest of H.B., 75 N.J. 243, 245 (1977), Chief Justice Hughes pointed out "the need for a realistic State approach to the dangers presented by the modern proliferation of handguns in the possession of millions of citizens including of course, many violent criminals." The Chief Justice noted that there were no less than 40 million handguns in circulation in the United States, with about 2 1/2 million more being added each year. Ibid. The Eisenhower Commission had found that in large U.S. cities "handguns assisted in 86% of all aggravated assaults committed with guns, 92% of homicides by gunfire and 96% of robberies committed with guns." Id. at 246.
The prevalence of crime, especially violent crime committed with handguns, has not slackened since the Chief Justice's opinions in Christener and H.B. Against such a backdrop it is hardly logical to conclude that the Legislature, in passing the Graves Act, intended to provide that armed robbers be sentenced *621 to mandatory minimum prison terms but that their accomplices escape such penalties.
Contrary to defendant's argument, a literal reading of the Code supports the construction that accomplices are subject to mandatory minimum penalties. Under the Code, accomplices are with few exceptions as liable as the person they aid. See N.J.S.A. 2C:2-6a, b(3), d, e and f. (Alexander does not come within any of the exceptions). Thus, under the Code, whether the accomplice is armed or unarmed, he is as guilty as the armed robber. Under the Code the unarmed accomplice and the armed robber have both committed a first degree crime and are both subject to the same penalty for that crime.
The Code in this respect follows prior law. In State v. Cooper, 10 N.J. 532 (1952) the court said:
Under our law, all those who conspire to commit a crime and participate in some way in its commission are joint principals and each is as guilty as the person who actually commits the crime and is liable to the same punishment. They are indicted, in the language of the statute, as principles (sic) and are not accused as being accessories[2] or aiders and abettors.
The distinction between principal and accomplice or aider and abettor has been abolished in our jurisdiction for purposes of indictment and punishment. [at 568. emphasis supplied]
See, also, State v. Western Union Tel. Co., 12 N.J. 468, 495 (1953).
Alexander is, in effect, arguing that the Legislature, in passing the Graves Act, intended to depart from long-standing New Jersey law and its embodiment in the Code by exempting accomplices from the rule that principals and accomplices be treated alike for purposes of liability "and punishment." State v. Cooper, supra. In the context of grave legislative concern over the onslaught of crime, that intention is impossible to glean.
*622 Similar arguments were made by defendants regarding N.J.S.A. 2A:151-5. Under that statute an additional sentence for armed criminals was authorized. The statute refers only to criminals "armed with" or "in possession" of the weapon. Nowhere are aiders and abettors mentioned. Yet cases involving multiple robbers have not limited the statute to the robber who was armed or in possession of the weapon. In State v. Jordan, 113 N.J. Super. 563 (1971), the Appellate Division upheld a conviction of one robber for armed robbery even though the other robber had physical possession of the gun and had alone approached the victim and demanded money. See, also, State v. Richardson, 73 N.J. 82 (1977). (Only one defendant possessed the weapon and struck the victim with it; but both were convicted at separate trials of being armed with a dangerous instrument under N.J.S.A. 2A:151-5). In State v. Ortiz, 124 N.J. Super. 189, 193 (App.Div. 1973), the court said "proof of possession of the knife by the defendant at the time of the commission of the robbery was not essential in order to establish his guilt of the charge of robbery while armed." See, also, State v. Cammarata, 12 N.J. Misc. 115, 169 A. 646 (Sup.Ct. 1934) aff'd 114 N.J.L. 274 (E. & A. 1935).
An established principle of statutory construction is the "assumption that the Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes." Brewer v. Porch, 53 N.J. 167, 174 (1969). Thus, the Legislature, in enacting the Graves Act, was aware that New Jersey had long since abolished the distinctions between accomplices and principals, and that the new Code essentially treated both the same. Moreover, the Legislature is presumed to be aware that the more than 50-year-old statute (N.J.S.A. 2A:151-5) providing for enhanced penalties for certain armed criminals has been applied with equal force to those who aid such criminals. Thus, it was unnecessary to add language to the Graves Act specifically referring to accomplices. By virtue of prior and present statute law and judicial decisions, accomplices in New Jersey *623 suffer the same fate as their fellow criminals. Language repeating that basic principle would have been surplusage.
If the Legislature had wished to exclude accomplices from the reach of the Graves Act, thereby departing from prior law and the accomplice provisions of the Code, it could have easily done so by appropriate language. For example, in drafting the felony murder provisions of the Code the Legislature clearly specified under what circumstances a participant in the underlying crime would escape liability for the homicide. See N.J.S.A. 2C:11-3a(3)(a), (b), (c) and (d). In the Graves Act the Legislature did not. The natural inference from that omission is that the Legislature intended that the general provisions of the Code would continue to govern the liability of accomplices of armed criminals.
The Legislature may speak as eloquently by silence as with words. In State v. Maguire, supra, the defendant argued that life imprisonment under the Code was not an available punishment for the crime of murder. The Chief Justice responded: "We find no support for this proposition in either the statutory language or the available legislative history. Moreover, we are convinced that if the Legislature intended virtually to eliminate this long standing and widely-accepted punishment for murder, it would have done so unequivocally and directly." 84 N.J. at 520. The same principles apply here. If the Legislature had intended in the Graves Act to eliminate the long-standing amalgamation of the liability of a principal and an accomplice with respect to punishment, then it would have "done so unequivocally and directly." Ibid.
Moreover, the construction urged by defendant would lead to absurd and unjust results. For example, three men rob a store. One pulls out a gun and holds the shopkeeper at bay. The second seizes the money from the cash register. The third is a lookout. All agreed to and did participate in a robbery. The second robber contends that he didn't know prior to the robbery that the first robber would be armed with a handgun. The *624 lookout contends that he didn't learn until after the robbery that a gun was used. Under the law, both before and after the Code, all three are liable as armed robbers. Since a gun was used, all are guilty under the Code of the first degree crime of armed robbery. N.J.S.A. 2C:15-1. Prior to the Code all were subject to the enhanced penalties under N.J.S.A. 2A:151-5.
It would be illogical and anomalous to assume that the Legislature intended under those facts to absolve the second and third robbers from a mandatory prison term unless the State could prove at a sentencing hearing that those robbers possessed or used the guns themselves. Much more likely is to attribute to the Legislature the intention that robbers and their accomplices take their chances that a gun may be used or possessed by one of them. Compare the language of Judge Joelson in State v. Guibilio, 139 N.J. Super. 251, 255 (Law Div. 1976), about the lack of "pretty choices" for those who have "opted for a life of crime." A construction that all robbers are subject to the same penalties as the one actually using or possessing the handgun, would be a more effective deterrent to the use of handguns in robberies and therefore accord with the Legislature's manifest purpose in the Graves Act.
This result is not draconian in practice. A minimum sentence of three years, or one-third of the sentence imposed, is not overly harsh for serious crimes involving firearms. In any event, clearly discernible and therefore binding upon a court is a strong legislative intent to impose on all criminals involved in such crimes the minimum prison terms required by the Graves Act. Such a construction is reasonable, logical and consonant with the Legislature's manifest purposes. An opposite construction would lead to foolish and unjust results.

III
Other jurisdictions considering this question have almost invariably reached the same conclusion as here.
*625 In People v. Stevens, 32 Cal. App.2d 666, 90 P.2d 595 (D.Ct.of App. 1939), an unarmed accomplice and his armed confederate were found guilty of armed robbery. The court held that both were therefore subject to certain minimum penalties which attached to those who committed crimes while armed. The court said:
When, therefore, two or more people associate themselves together for the purpose of robbery, thereby becoming principals; and when in furtherance of such plan and to consummate the crime, one of their number is armed with a dangerous weapon, all are concededly equally guilty, and therefore all should be punished in accordance with the statute which provides increased penalties for defendants who are armed at the time of the commission of the offense. Appellant, although not in actual physical possession of the weapon, was nevertheless aiding and abetting his armed accomplice who had the weapon, and therefore is properly accused, tried and punished for the acts of his accomplice....
The laws here in question were designed for the protection of the community and its residents, and not the lawbreaker. They seek to discourage crimes committed with the use of deadly and dangerous weapons by providing additional penalties in cases where such weapons are used to outrage an individual in his personal or property rights. To attain the intended purpose it must be held, and we do so hold, that any defendant participating as a principal in a crime where a dangerous or deadly weapon is used is liable to the same penalties as are imposed upon the codefendant who actually possesses the weapon....
To hold otherwise would to a marked degree nullify, impair and materially weaken the object sought to be accomplished by this salutary legislation. [90 P. 2d at 596, 597]
A number of jurisdictions have followed the lead of People v. Stevens, supra. In State v. Willis, 5 Wash. App. 441, 487 P.2d 648 (App.Div. 1971), both defendants were sentenced to the mandatory minimum required by their conviction of robbery while armed with a deadly weapon. Defendant argued that only the criminal having actual possession of the deadly weapon is subject to the enhanced penalties. The court responded that "every person concerned with the commission of a felony ... whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent ... is a principal and should be proceeded against as such." 487 P.2d at 650. The Washington court said that this has been the law for over half a century and that therefore the legislature must have taken that into consideration at the time it provided for mandatory *626 minimum sentencing. The court held, therefore, that the unarmed robber was also subject to the enhanced penalties. Accord State v. Silvernail, 25 Wash. App. 185, 605 P.2d 1279 (App.Div. 1980); State v. Rieger, 26 Wash. App. 321, 613 P.2d 163 (App.Div. 1980); State v. Willoughby, 29 Wash. App. 828, 630 P.2d 1387 (App.Div. 1981); Gammel v. State, 259 Ark. 96, 531 S.W.2d 474 (Sup.Ct. 1976); State v. Sanders, 280 N.W.2d 375 (Iowa Sup.Ct. 1979); State v. Black, 282 N.W.2d 733 (Iowa Sup.Ct. 1979); State v. Jones, 324 N.E.2d 770 (Ohio App. 1975). Contra, People v. Paradiso, 248 N.Y. 123, 161 N.E. 443 (Ct.App. 1928).
The Graves Act applies with equal force to accomplices as well as to those who actually use and possess the firearm. Thus an unarmed accomplice of an armed robber is subject to the mandatory minimum sentences required by the Graves Act.
NOTES
[1] This opinion is a refinement of an oral opinion given in this case.
[2] An accomplice should not be confused with an accessory after the fact. The latter is not liable or punishable as a principal. See State v. Sullivan, 77 N.J. Super. 81, 88-90 (App.Div. 1962).