Wendel L. DAILEY, Appellant,

v.

STATE of Alaska, Appellee.

No. 7128.

Court of Appeals of Alaska.

Jan. 13, 1984.

Alex Swiderski, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Michael S. McLaughlin, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Wendel Dailey and Steven Murphy were charged with armed robbery in violation of AS 11.41.500(a)(1), burglary in a dwelling in violation of AS 11.46.300(a)(1), and assault in the third degree in violation of AS 11.41.-220. The evidence at trial indicated that Dailey and Murphy attended a party in Barrow at the home of Clarence Dashiell on October 15, 1981. A fight broke out between Murphy and Dashiell. Dailey and Murphy left the party shortly thereafter.

Later that night Murphy and Dailey returned to the Dashiell residence and knocked on the door. Richard Martell, who also lived at that address, opened the door. Murphy informed Martell that he had forgotten his gloves. Martell closed and locked the door while he went to look for Murphy's gloves. After he found a pair of gloves which he did not recognize as either his or Dashiell's, he proceeded to unlock the door to give them to Murphy. Murphy, gun in hand, forced his way into the house. Martell testified that the gun was a Ruger .44 magnum. Once inside, Murphy told Dailey "to do his thing." Dailey disap-

peared into a back bedroom. Murphy remained in the living room with Martell. Martell testified that he never saw Dailey with the gun in his possession. After the pair left, Martell discovered that he was missing a bag of marijuana. Dashiell, who was not present at the time, later discovered that a box containing his loose change was gone. Dashiell was also unable to locate a small gold earring.

Following the incident, the police conducted a search of the home Dailey shared with Ruth Aiken. There the police found a holster and a box of shells. Upon searching the apartment Murphy shared with his mother, the police discovered a Ruger .44 magnum concealed under a couch. A police check revealed that the gun had been sold to Dailey in December of 1979. At trial, Aiken also confirmed that the Ruger was Dailey's.

The jury found Murphy guilty of all three counts as charged. Dailey was convicted of armed robbery, burglary, and assault in the fourth degree, a lesser-included offense of assault in the third degree. Judge Hodges sentenced Dailey to a six-year presumptive sentence for robbery, five years with four suspended for burglary, and one year with six months suspended on the assault charge. The sentences were made concurrent. Dailey's suspended sentences were suspended for a period of five years. Dailey appeals his sentence to this court. We reverse Dailey's sentence for robbery.

Dailey's main contention on appeal is that Judge Hodges erred in sentencing him to a presumptive sentence under the provisions of former AS 12.55.125. Dailey was convicted of robbery in the first degree, a class A felony.[1] Former AS 12.55.125(c)(1) provided in part:

> *Sentences of imprisonment for felonies.* (c) A defendant convicted of a class A felony may be sentenced to a

---

1. Former AS 11.41.500(a)(1) provided:

   *Robbery in the first degree.* (a) A person commits the crime of robbery in the first degree if he violates § 510 of this chapter and, in the course of violating that section or in

immediate flight thereafter, he or another participant
   (1) is armed with a deadly weapon or represents by words or other conduct that he or another participant is so armed.

definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155–12.55.175:

(1) if the offense is a first felony conviction, other than for manslaughter, *and the defendant possessed or used a firearm* or caused serious physical injury during the commission of the offense, six years. [Emphasis added.]

Judge Hodges sentenced Dailey to the six-year presumptive term provided for in former AS 12.55.125(c)(1). Judge Hodges concluded that although Dailey did not personally possess the firearm, Dailey's conduct fell within former AS 12.55.125(c)(1) because Dailey's accomplice, Steven Murphy, possessed a firearm during the offense. Dailey urges us to construe former AS 12.55.125(c)(1) strictly and argues that if that statute is strictly construed Judge Hodges erred because he had to find that Dailey personally possessed or used a firearm before he could sentence Dailey to the presumptive term.

The state argues that this case is controlled by *Rice v. State*, 589 P.2d 419 (Alaska 1979). Rice, like Dailey, was convicted of armed robbery under the theory that his accomplice used a firearm during the robbery. Former AS 11.15.240. Rice was sentenced to the minimum term for an offense involving the use of a firearm. Former AS 11.15.295. However, former AS 11.15.295

was a separate statutory crime to which the principles of accomplice liability applied. *Whitton v. State*, 479 P.2d 302, 305 (Alaska 1970). The theory of accomplice liability was crucial to the court's decision in *Rice*.

Alaska has abolished the common law distinction between accessories and principals to a crime. We have in the past applied this statute to armed robbery offenses where only one offender used a firearm during the robbery. Since there was sufficient evidence to convict Rice of robbery, the fact that a firearm was used in the robbery makes Rice a principal to the crime of use of a firearm during the commission of a robbery.

589 P.2d at 420 (footnotes omitted).

■ There is no doubt that the theory of accomplice liability applies where the use or possession of a firearm is an element of the offense or a separate offense.[2] The question which we must decide is whether the law of accomplice liability acts to place Dailey within the provisions of former AS 12.55.125(c)(1).

In attempting to decide this question we have looked at the decisions of many other courts to see how they have resolved this issue. Naturally the decisions in these jurisdictions are dependent on the statutes which they are construing. We find that there is no clear-cut answer in these decisions to the question which Dailey raises.[3]

**2.** Former AS 11.16.100 provided:

*Legal accountability based upon conduct.* A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable under § 110 of this chapter, or by both.

Former AS 11.16.110 provides:

*Legal accountability based upon the conduct of another: Complicity.* A person is legally accountable for the conduct of another person constituting an offense if

(1) he is made legally accountable by a provision of law defining the offense;

(2) with intent to promote or facilitate the commission of the offense,

(A) he solicits the other person to commit the offense; or

(B) he aids or abets the other person in planning or committing the offense; or

(3) acting with the culpable mental state that is sufficient for the commission of the offense, he causes an innocent person or a person who lacks criminal responsibility to engage in the proscribed conduct.

**3.** *See, e.g., Gammel v. State*, 259 Ark. 96, 531 S.W.2d 474 (1976); *People v. Swanson*, 638 P.2d 45 (Colo.1981); *State v. Sanders*, 280 N.W.2d 375 (Iowa 1979); *People v. Jones*, 119 Mich.App. 164, 326 N.W.2d 411 (1982); *State v. Hill*, 287 N.W.2d 918 (Minn.1980); *Anderson v. State*, 95 Nev. 625, 600 P.2d 241 (1979); *State v. Alexander*, 184 N.J.Super. 615, 446 A.2d 1257 (1981); *Key v. State*, 563 S.W.2d 184 (Tenn.1978); *State v. McKim*, 98 Wash.2d 111, 653 P.2d 1040 (1982) (cases which hold that an unarmed accomplice is subject to an enhanced penalty or minimum term). *See, e.g., People v. Walker*, 18 Cal.3d 232, 133 Cal.Rptr. 520, 555 P.2d 306 (1976); *Earnest v. State*, 351 So.2d 957 (Fla.1977); *State v.*

We will briefly discuss some of the decisions which we have considered.

In *State v. Stuart,* 575 P.2d 559, 565 (Kan.1978), the Supreme Court of Kansas construed a statute with language similar to AS 12.55.125(c)(1).[4] The court emphasized the plain language of the statute, the fact that the statute could easily have been written to apply to accomplices, and the doctrine of statutory construction that criminal statutes should be strictly construed:

> The term "defendant" is used in the singular throughout the statute. At no

time is the term "defendants" used. By the same token the statute does not refer to mandatory sentencing applying to aiders and abettors, accomplices or co-conspirators. It is well understood that criminal statutes must be strictly construed against the state and in favor of the defendant. We hold that the statute applies only to the defendant *personally* armed with a firearm at the time the crime is committed.[5]

*Id.* (emphasis added).

In *State v. Alexander,* 184 N.J.Super. 615, 446 A.2d 1257 (1981), the New Jersey

---

*Thompson,* 101 Idaho 430, 614 P.2d 970 (1980); *State v. Stuart,* 223 Kan. 600, 575 P.2d 559 (1978); *People v. Paradiso,* 248 N.Y. 123, 161 N.E. 443 (1928); *State v. Hicks,* 38 Or.App. 97, 589 P.2d 1130 (1979) (cases which hold that an unarmed accomplice is not subject to an enhanced penalty or minimum term).

An analysis of the relevant statutes indicates that, in those jurisdictions where an unarmed accomplice is subject to either an additional penalty or minimum term, only New Jersey and Washington have accomplice statutes similar to Alaska's. *See* N.J.S.A. 2C:2–6; RCW 9A.08.020. Arkansas, Iowa, Michigan, Nevada and Tennessee have statutes which provide that an accomplice is also to be *punished* as a principal. *See, e.g.,* I.C.A. § 703.1; M.C.L.A. § 767.39; N.R.S. § 195.020; T.C.A. § 39–1–303.

Among the jurisdictions which hold that an enhanced penalty or minimum term does *not* apply to an unarmed accomplice, only Florida has a statute which expressly limits application of a three-year minimum term to a defendant "who had [a firearm] in *his* possession." West's F.S.A. § 775.087(2) (emphasis added). California, Idaho, Kansas and Oregon have firearm and accomplice liability statutes similar to Alaska's.

4. K.S.A.1976 Supp. § 21–4618 reads in pertinent part:

> *Probation and sentencing for certain crimes involving use of firearms.* (1) Probation or suspension of sentence shall not be granted to any defendant who is convicted of the commission of the crime of rape, the crime of aggravated sodomy or any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which *the defendant used any firearm in the commission thereof* and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall apply only to crimes committed after the effective date of this act. This section shall not apply to any crime committed by a person

under eighteen (18) years of age. [Emphasis added].

5. In *People v. Walker,* 18 Cal.3d 232, 133 Cal. Rptr. 520, 555 P.2d 306 (Cal.1976), the court reached the same result as the Kansas court. The California court noted that:

> Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. Such a direction is found in section 31 which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. But the statute which defines aiders and abettors as principals in the commission of a criminal offense does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment " 'do not define a crime or offense but relate to the penalty to be imposed under certain circumstances.' " Hence the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime.

*Id.* 133 Cal.Rptr. at 525, 555 P.2d at 311 (citations omitted).

In *State v. Thompson,* 101 Idaho 430, 614 P.2d 970 (1980), the Idaho Supreme Court also relied on general principals of statutory construction to support its decision that "only the person who actually used the gun can be subjected to the enhancement provisions of I.C. § 19–2520." *Id.* 614 P.2d at 977. The Idaho statute referred to "[a]ny person ... who carried, displayed, used, threatened, or attempted to use a firearm while committing the crime...." *Id.* The court noted that "[w]hile the language of the statute clearly imposes enhancement of sentence provisions on the one *who actually has the firearm,* it is not evident from the language of the statute whether the legislature intended to apply the enhancement provision to co-principals." *Id.*

superior court reached a result which was opposite to that reached by the Kansas court. The court held that an unarmed accomplice was subject to a mandatory term where a firearm was used or possessed during the commission of a crime. The court's decision was based on what it perceived to be the specific purpose of New Jersey's firearm statute which was "to increase the penalties and, therefore, deter commission of serious crimes when accomplished or accompanied by the use of firearms." *Id.* 446 A.2d at 1259. The court stated that "[a] construction that all robbers are subject to the same penalties as the one actually using or possessing the handgun, would be a more effective deterrent to the use of handguns in robberies and therefore accord with the Legislature's manifest purpose...." *Id.* 446 A.2d at 1262.

The Washington Supreme Court reached still a third result in *State v. McKim*, 98 Wash.2d 111, 653 P.2d 1040, 1043 (Wash. 1982). The court in that case held that a defendant was subject to having his sentence enhanced if he participated in a crime with *knowledge* that an accomplice was armed with a deadly weapon.[6]

■■■ We conclude that we should follow the cases which hold that statutes similar to former AS 12.55.125(c)(1) should be construed to apply only to a defendant who personally uses or possesses a firearm during the commission of an offense. That certainly is the plain language of the statute and the statute could have been easily written to apply to an accomplice. This interpretation is consistent with the principle of statutory construction which requires criminal statutes to be strictly construed. 3 C. Sands, *Sutherland Statutory Construction* § 59.04, at 13 (4th ed. 1974). *See Lee v. State*, 673 P.2d 892, 895 (Alaska App.1983). We believe that the legislature could rationally have intended this result. The defendant who personally possesses or uses a firearm or personally causes serious physical injury would normally be fully responsible for those actions. His accomplice could very well have a lesser level of responsibility. For instance the accomplice might not know that his partner planned to use a gun. Therefore for sentencing purposes, there might be a reason to treat a defendant more severely who personally uses a gun or personally causes serious physical injury. The revised criminal code is flexible enough to allow an accomplice who did not personally possess or use a firearm to receive the same sentence as a co-defendant who personally possessed or used a firearm if the same sentence is justified. For instance, even though we hold that Dailey is not subject to a presumptive sentence under former AS 12.55.-125(c)(1), nothing prevents the trial judge from giving Dailey a sentence of six years under the general provisions of former AS 12.55.125(c) and then restricting his parole eligibility under AS 33.15.230 if he concludes that this sentence is appropriate.[7]

---

614 P.2d at 978. The court observed that where there is ambiguity, a criminal statute should be resolved in favor of lenity. *Id.* 614 P.2d at 977.

6. RCW 9.95.040 provided for the Board of Prison Terms and Paroles to fix the period of the defendant's confinement. The statute placed certain limitations on the board:
(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.
(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

7. AS 12.55.125(c) now provides in part:
(c) A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms, subject to adjustment [for aggravating or mitigating factors]:
(1) if the offense is a first felony conviction and does not involve circumstances described in (2) of this subsection, five years;
(2) if the offense is a first felony conviction, other than for manslaughter, and the defendant possessed a firearm, used a dangerous instrument, or caused serious physical injury during the commission of the offense, ... seven years;
Thus under this statute, a defendant who was a first felony offender and possessed a firearm during the commission of an offense would face

We therefore hold that Judge Hodges erred in applying the provisions of former AS 12.55.125(c)(1) to Dailey and in imposing a presumptive sentence under that provision. We therefore vacate Dailey's presumptive sentence on the robbery charge and remand for further proceedings in conformity with this opinion.[8]

The sentence is VACATED, and this case is REMANDED for resentencing.

a presumptive sentence of seven years and his unarmed accomplice who was a first offender would face a presumptive sentence of five years. However, those sentences are subject to adjustment for aggravating and mitigating factors and may also qualify for adjustment by a three-judge panel. We believe that both the former code and the current code permit defendants who have similar levels of criminal responsibility to be treated similarly.

**8.** Dailey also argues that Judge Hodges erred when he failed to reduce the sentence based on certain statutory mitigating factors. AS 12.55.-155(d)(1), (2), (9) and (13). We conclude that Judge Hodges did not abuse his discretion when he found that these statutory mitigating factors had not been established.