NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| JAMES EARL SMITH,<br><br>                              Appellant,<br><br>                        v.<br><br>STATE OF ALASKA,<br><br>                              Appellee. | Court of Appeals No. A-12390<br>Trial Court No. 3AN-12-8143 CR<br><br><br>O P I N I O N<br><br><br>No. 2608 — July 27, 2018 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Jane B. Martinez, Law Office of Jane B. Martinez, LLC, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. June Stein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge WOLLENBERG.

A jury found James Earl Smith guilty of first-degree robbery, first-degree burglary, second-degree assault, and second-degree theft in connection with a home invasion. At Smith's sentencing, the trial court merged the theft, but not the assault, into the robbery conviction.

On appeal, Smith argues that Alaska's double jeopardy clause requires the merger of the robbery and the assault into a single conviction. Smith also argues that the judgment fails to properly reflect the merger of the robbery and the theft into a single conviction. We agree with Smith on both points and remand for the trial court to merge the robbery, assault, and theft verdicts into a single conviction and modify the judgment to reflect the entry of two convictions — first-degree robbery and first-degree burglary.

Additionally, Smith argues that the trial court erred by declining to find a mitigating factor under AS 12.55.155(d)(4) — that Smith was a youthful person substantially influenced to commit the crime by a more mature person. We uphold the trial court's decision denying this mitigator.

*Underlying facts*

In the summer of 2012, Benjamin Gall and Amanda Swafford were renting a room in their apartment to Richard Erdmann and his girlfriend. Erdmann was paying rent to Gall at least partially in the form of heroin.

After a physical altercation between Gall and Erdmann, Gall and Erdmann shook hands, but Gall told Erdmann to move out. A few hours later, Erdmann returned with three grams of heroin for Gall to sell while he was commercial fishing in Whittier. Gall accepted the heroin and went to Whittier as planned, but he returned to Anchorage two days early without having sold the heroin.

That evening, a group of men broke into Gall and Swafford's apartment while they were sleeping. The group included Erdmann, James Smith, Taylor Smith, and a fourth man allegedly named "Hugo." Gall knew all of the men except for Hugo.

Gall encountered Hugo at the top of the stairs; Gall lunged at Hugo and the two tumbled down the stairs and flipped over the banister. Once Gall landed at the bottom of the stairs, all four men began kicking Gall in the face and head. Hugo then

held Gall down while the other three men took items from the apartment and put them in a vehicle outside. At one point when Gall tried to get up, Hugo hit him in the face with a hammer.

Anchorage police responded to the apartment after receiving two 911 calls. The responding officer arrived just as the robbers' vehicle was exiting the parking area. After a short pursuit, the vehicle stopped, and three men fled the vehicle. The officer recognized Erdmann and Taylor Smith and later identified James Smith. The police also determined that James Smith was the registered owner and driver of the vehicle, which contained Gall's and Swafford's belongings.

Gall sustained multiple fractures to his face, nasal, and sinus area from the beating. Gall testified that he now has metal plates and screws in his face and that he has lost significant vision in his right eye.

### Proceedings

A grand jury indicted James Smith and his co-defendants — Erdmann and Taylor Smith — for first-degree robbery, first-degree burglary, second-degree assault, and second-degree theft.[1] The police never located or charged Hugo.

The three co-defendants were tried together. At trial, the prosecutor argued that the defendants initially intended to commit a burglary, but when they found Gall and Swafford at home, the incident escalated into a robbery. The prosecutor argued that the defendants assaulted Gall in order to facilitate the taking of Gall's property to satisfy a drug debt.

---

[1] *See* AS 11.41.500(a)(3) (first-degree robbery); AS 11.46.300(a)(1) (first-degree burglary); AS 11.41.210(a)(1) (second-degree assault); AS 11.46.130(a)(1) (second-degree theft); and AS 11.16.110(2) (accomplice liability).

The jury convicted the three defendants of all charges. At the prosecutor's request, the court also submitted special verdict forms to the jury.[2] In the special verdicts, the jury found that in the course of committing first-degree robbery, none of the co-defendants used a dangerous instrument or caused serious physical injury to Gall. In other words, the verdicts indicated that the jury found that Smith and his co-defendants were complicit in the robbery, but that it was Hugo who personally used a dangerous instrument and caused serious physical injury to Gall.

Prior to sentencing, Smith proposed mitigating factor AS 12.55.125(d)(4) — that Smith was a youthful person who had been substantially influenced to commit the robbery by a more mature person (Erdmann). Smith also argued that the robbery and assault verdicts should merge into a single conviction.

The prosecutor agreed that the robbery and theft verdicts should merge, but he opposed Smith's request to merge the robbery and assault verdicts. The prosecutor, however, supported the imposition of completely concurrent sentences for the robbery and the assault.

---

[2]  The prosecutor sought the special verdicts because Smith was a first felony offender, and the prosecutor wished to seek an enhancement of Smith's sentence for robbery (a class A felony) if the jury found him guilty of that offense. *See* AS 11.41.500(b) (first-degree robbery is a class A felony). To establish the enhancement, the State needed to prove to a jury that Smith *personally* used a dangerous instrument or caused serious physical injury during the commission of the robbery (rather than through the conduct of another). *See* former AS 12.55.125(c)(2)(A) (pre-2016 version) (if the defendant is a first felony offender and possessed a firearm, used a dangerous instrument, or caused serious physical injury or death during the commission of a class A felony, the sentencing range is elevated from 5 to 8 years to 7 to 11 years); *see also West v. State*, 223 P.3d 634, 638 (Alaska App. 2010) (entitling defendant to a jury trial on this issue); *Dailey v. State*, 675 P.2d 657, 661 (Alaska App. 1984) (applying class A sentencing enhancement statute only to a defendant who personally satisfied enhancement criteria).

At sentencing, the court rejected Smith's proposed mitigating factor. The court merged the robbery and theft verdicts into a single conviction. The court did not expressly rule on Smith's request to merge the robbery and the assault, but the court implicitly denied Smith's request when it announced its intent to impose the prosecutor's recommended sentence and then imposed sentence on the three remaining convictions.

The court imposed a sentence of 8 years with 3 years suspended on the robbery conviction, with the sentences on the assault and burglary convictions running concurrently to each other and to the robbery sentence. Smith therefore received a composite sentence of 5 years to serve.

This appeal followed.

*Smith's argument that he should not have received separate convictions and sentences for first-degree robbery and second-degree assault*

Smith contends that, under the double jeopardy clause of the Alaska Constitution (article I, section 9), he could not lawfully receive separate convictions for first-degree robbery and second-degree assault.[3] The failure to merge verdicts that constitute the "same offense" for double jeopardy purposes constitutes fundamental error.[4]

In *Whitton v. State*, the Alaska Supreme Court established the test for determining whether two crimes constitute a single offense for double jeopardy

---

[3] Article I, section 9 of the Alaska Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Multiple punishments for "the same offense" violate this constitutional provision. *Whitton v. State*, 479 P.2d 302, 310 (Alaska 1970).

[4] *Johnson v. State*, 328 P.3d 77, 83 (Alaska 2014).

purposes.[5]  Under *Whitton*, a court must compare the different statutory provisions as applied to the facts of the case and evaluate any differences in intent or conduct in light of the societal interests to be vindicated.[6]  If the differences in intent or conduct are "insignificant or insubstantial" in relation to the societal interests, the court may only enter a single conviction and sentence.[7]  The supreme court recently reaffirmed that the *Whitton* test "requires a comparison of the different statutes '*as they apply to the facts of the case*[.]'"[8]

The basic elements of the crime of robbery in Alaska are set out in the second-degree robbery statute, AS 11.41.510.  Under that statute, and as relevant to this case, a person commits second-degree robbery if:  (1) the person takes or attempts to take property from the immediate presence or control of another and, in the course of that taking or attempted taking, (2) the person uses force or threatens the immediate use of force upon any person, (3) with the intent to prevent or overcome resistance to the taking of the property or the retention of the property after taking.

Under AS 11.81.900(b)(27), "force" is defined broadly as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement."

---

[5]  *Whitton*, 479 P.2d at 312.

[6]  *Id.*

[7]  *Id.* at 312, 314; *see also Rofkar v. State*, 273 P.3d 1140, 1143 (Alaska 2012).

[8]  *Rofkar*, 273 P.3d at 1143 (quoting *Whitton*, 479 P.2d at 312) (emphasis in *Rofkar*).

Second-degree robbery is elevated to first-degree robbery if, in relevant part, any participant in the robbery causes or attempts to cause serious physical injury to a person.[9] The State charged Smith with first-degree robbery under this provision.

The State also charged Smith with second-degree assault under AS 11.41.210(a)(1) — *i.e.*, under the theory that Smith, as principal or accomplice, and with intent to cause physical injury, caused physical injury to Gall by means of a dangerous instrument.

We have previously held that when identical *threats* of harm underlie both a first-degree (armed) robbery charge under AS 11.41.500(a)(1) and a third-degree assault charge for placing a single victim in fear of imminent serious physical injury, and the jury returns guilty verdicts on both counts, Alaska's double jeopardy clause requires the verdicts to merge into a single conviction.[10] We recognized that although robbery requires an additional intent — intent to prevent or overcome resistence to the taking or retention of property — the differences between the crimes were not substantial enough to justify multiple convictions when the threat of immediate harm that was a component of the robbery was the same threat that placed a person in fear of imminent serious physical injury for purposes of the assault.[11]

---

[9] AS 11.41.500(a)(3). *See* Alaska Criminal Code Revision, Tentative Draft, Part II, at 83 (1977) (describing factors that aggravate second-degree robbery to first-degree robbery).

[10] *Moore v. State*, 218 P.3d 303, 306 (Alaska App. 2009) (citing *Sudbury v. State*, 2007 WL 293129, at *4-5 (Alaska App. Jan. 31, 2007) (unpublished); *Tremont v. State*, 1994 WL 16196222, at *3 (Alaska App. Mar. 30, 1994) (unpublished); *Holmes v. State*, 1984 WL 908540, at *3-4 (Alaska App. June 20, 1984) (unpublished)).

[11] *Holmes*, 1984 WL 908540, at *4 (citing *Brookins v. State*, 600 P.2d 12, 16 (Alaska 1979)); *see also Nell v. State*, 642 P.2d 1361, 1366 (Alaska App. 1982) (noting that "it is clear that the legislature, in passing [the second-degree] robbery statute, intended to emphasize the fact that robbery is a crime against the person and deemphasize the theft

(continued...)

We see no reason to reach a different outcome when both charges are based on the same physical injury, and the State relies on the victim's injury to elevate second-degree robbery to first-degree robbery under AS 11.41.500(a)(3). We therefore hold that when the State relies on the infliction of serious physical injury to elevate second-degree robbery to first-degree robbery under subsection (a)(3), Alaska's double jeopardy clause does not permit a separate conviction for assault based on the same injury.[12]

Our conclusion is supported by Oregon case law construing nearly identical statutes. In 1978, when the Alaska Legislature revised Alaska's criminal code, it based Alaska's revised robbery and second-degree assault statutes on the corresponding statutes in Oregon.[13] That same year, the Oregon Court of Appeals issued a decision merging a second-degree assault conviction into an accompanying first-degree robbery conviction. The court explained, "[W]hen the state relies upon precisely the same act to establish the use-physical-force element of robbery and the cause-physical-injury element of assault, the assimilation of one crime into the other is so substantial as to warrant assuming a legislative intent to merge."[14]

---

[11]  (...continued)
aspects of the offense").

[12]  *Cf. Marker v. State*, 692 P.2d 977, 982-83 (Alaska App. 1984) (recognizing distinction between "force" and physical injury but holding that the trial court erred in declining a lesser-included offense instruction for fourth-degree assault where evidence supporting second-degree robbery unequivocally established physical injury).

[13]  Alaska Criminal Code Revision, Tentative Draft, Part I, at 97 (1977); Alaska Criminal Code Revision, Tentative Draft, Part II, at 110 (1977).

[14]  *State v. Steele*, 577 P.2d 524, 528 (Or. App. 1978).

We acknowledge that even when first-degree robbery and assault occur as part of the same criminal episode, they may be based on separate and distinct acts of force. In that case, separate convictions will be warranted.[15]

Under the facts of this case, however, the robbery and the assault must merge into a single conviction. The prosecutor did not argue that Smith (or another participant) committed two separate and distinct acts of violence, one sufficient to satisfy the second-degree assault charge and the other sufficient to support the conviction for first-degree robbery under AS 11.41.500(a)(3). Rather, the prosecutor argued that the jury should convict the defendants of both charges for conduct occurring over the entire incident.

And for purposes of elevating the robbery to first-degree robbery (by causing or attempting to cause serious physical injury), the prosecutor did not single out any specific act that caused Gall's injuries. Rather, the prosecutor argued generally that the jury could infer from the extensive injuries to Gall's head that the defendants intended to cause him serious physical injury.

In short, the prosecutor did not argue that there were separate and distinct acts of physical force, one supporting the assault charge and the other supporting the first-degree robbery charge.

On appeal, the State argues that the special verdict forms demonstrate that the jury found the assault to be distinct from the robbery. In particular, the State argues that since the jury found that Smith did not use a dangerous instrument in the course of the robbery, and the assault charge required use of a dangerous instrument, the two crimes were separate and should not merge.

---

[15] *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, at 350 (3rd ed. 1982) (footnotes omitted).

But the State overlooks the fact that Smith was charged as an accomplice to both the robbery and the assault. The special verdict form omitted any reference to accomplice liability, and instead asked the jurors to decide whether Smith *personally* caused serious physical injury or used a dangerous instrument in the course of committing the robbery. Thus, the special verdict forms left open the possibility that the jury found Smith guilty based on his accomplice's conduct.

Our review of the record persuades us that this is precisely what the jury found. As a technical matter, the special verdicts show that the jury reached one of two conclusions regarding the robbery — either (1) Smith and his co-defendants were accomplices to Hugo's act of causing (or attempting to cause) serious physical injury, or (2) Smith and his co-defendants *attempted* to personally cause serious physical injury during the robbery.

The second option is implausible under the facts of this case. First, Gall suffered extensive injuries. None of the co-defendants actively contested that Gall suffered serious physical injury, and two of the defense attorneys expressly conceded the point.

Second, the only evidence the jury heard about Smith's personal assaultive conduct was that he used his feet to kick Gall. The court instructed the jury that feet constitute a "dangerous instrument" only "if used in a way or manner . . . capable of causing death or serious physical injury." The jury's finding that Smith and his co-defendants did not use a dangerous instrument and thus, that they did not use their feet in a manner capable of causing serious physical injury, negates any reasonable conclusion in the context of this case that Smith *personally* attempted to cause serious physical injury during the course of the robbery.

Accordingly, the jury must have found Smith and his co-defendants guilty of first-degree robbery, not as principals, but as accomplices to Hugo's act of causing serious physical injury.

The same is true for the assault verdict. There was no evidence that Smith used his feet at two separate and distinct times — one for purposes of the robbery and one for purposes of the assault. Because the jury concluded that Smith did not use his feet in a manner capable of causing serious physical injury for purposes of the robbery, it can rationally be inferred that the jury reached the same conclusion as to the assault. In fact, the prosecutor himself acknowledged, prior to sentencing and at the sentencing hearing itself, that the special verdict implied that the jury concluded that the hammer was the dangerous instrument and that Smith was guilty of second-degree assault as Hugo's accomplice.[16]

We therefore conclude, contrary to the State's argument in this appeal, that the special verdicts in this case further underscore the need for merger because of the identity of the conduct underlying the two counts. To the extent there is any ambiguity as to the proper interpretation of the jury's verdicts, that ambiguity must be resolved in Smith's favor.[17]

Accordingly, we vacate the separate assault conviction and direct the trial court to merge the second-degree assault verdict into the first-degree robbery conviction.

---

[16] Indeed, in the briefing of Smith's co-defendant's appeal, a different attorney for the State advocates this precise interpretation of the special verdict. *See Taylor Smith v. State*, Court of Appeals File No. A-12545, Appellee's Brief, at 26-27.

[17] *State v. McDonald*, 872 P.2d 627, 660 (Alaska App. 1994) ("[C]onjecture based on the relative strength of competing theories of guilt can be no substitute for certainty when the double jeopardy clause is implicated. Any ambiguity must be resolved in favor of the accused.").

*The trial court should amend the judgment to reflect two convictions — one*
*for first-degree robbery and one for first-degree burglary*

In a related argument, Smith maintains that the judgment improperly reflects two separate convictions for robbery and theft, when in fact the trial court merged these counts at sentencing. The judgment states that the theft merged with the robbery only "for purpose of sentencing."

Smith contests this characterization and argues that the finding of merger precludes not only separate sentencing, but also the entry of a separate conviction, on the theft count. He argues that we should vacate the theft conviction. The State concedes error on this point.

The State's concession is well-founded.[18] As we explained in *Nicklie v. State*, Alaska law does not recognize merger for sentencing purposes only.[19] Rather, when a jury finds a defendant guilty of two counts that merge, the merger results both in a single sentence and in a single conviction, based on the jury's two verdicts.

Accordingly, we remand this case for modification of the judgment. Based on our ruling that the assault must merge with the robbery, the amended judgment should reflect that Smith was convicted, and sentenced, for only two convictions — first-degree robbery (based on the jury's robbery, assault, and theft verdicts) and first-degree burglary.[20]

---

[18] *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently evaluate any concession of error by the State in a criminal case).

[19] *Nicklie v. State*, 402 P.3d 424, 425-26 (Alaska App. 2017).

[20] *See id.* at 426.

*The superior court did not err in rejecting Smith's proposed mitigating factor*

Prior to sentencing, Smith asked the court to find mitigating factor AS 12.55.155(d)(4) — that he was a youthful person whose conduct was substantially influenced by another, more mature person. Smith, who was nineteen years old at the time of the commission of the offenses, argued that he was substantially influenced by Erdmann because Erdmann, who was more than six years older than Smith, orchestrated the home invasion in order to collect on Gall's drug debt.

The trial court rejected the mitigating factor. The judge recognized the age difference between Erdmann and Smith and acknowledged the fact that there was likely a "leader" among the individuals who broke into Gall's home. However, the judge concluded that there was insufficient evidence to support the mitigator. The judge noted in particular Gall's testimony that, when he saw Smith stealing his belongings, he told Smith, "You're going to have to answer to God for this one," to which Smith responded that Gall "knew the rules" and "knew this was coming." The judge concluded that Smith's comment undercut Smith's assertion that he was "being led by somebody else [or] overwhelmed by somebody who's older."

We have reviewed the judge's findings and the record. Even if Smith qualified as a "youthful defendant" for purposes of mitigator (d)(4), we agree with the trial court that Smith failed to present sufficient evidence that he was substantially influenced by or under particular pressure from Erdmann to participate in the robbery.[21]

---

[21] *See* AS 12.55.155(f) (requiring defendants to prove mitigating factors by clear and convincing evidence).

Smith argues that Gall's testimony lacked credibility, and the trial court therefore erred in relying on Gall's testimony about the statement Smith allegedly made regarding the "rules." But the jury obviously credited Gall's testimony generally, and the trial judge,

(continued...)

Accordingly, we uphold the trial court's decision rejecting the mitigator.

*Conclusion*

We REMAND this case for merger of the first-degree robbery, second-degree assault, and second-degree theft verdicts into a single conviction and for modification of the judgment to reflect the entry of only two convictions — for first-degree robbery and first-degree burglary. However, because Smith's sentence for the assault was completely concurrent to his sentence for the robbery, and our review of the record indicates that Smith's sentencing was not otherwise impacted by entry of the assault as a separate conviction, re-sentencing is not necessary.

We otherwise AFFIRM the judgment of the superior court.

---

[21] (...continued)
having observed the trial and having seen Gall testify, was entitled to credit some or all of his testimony. *See Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (noting that the trial court, when making factual findings, "performs the function of judging the credibility of witnesses and weighing conflicting evidence").