909 P.2d 1142

**Ricky Dale GARRINGER,
Petitioner–Appellant,**

v.

**STATE of Hawai'i, Respondent–Appellee.**

**No. 18573.**

Supreme Court of Hawai'i.

Jan. 23, 1996.

---

Ricky Dale Garringer, on the briefs, Aiea, Pro Se.

Vickie L. Kapp, Deputy Prosecuting Attorney, on the briefs, Honolulu, for respondent-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Ricky Dale Garringer appeals from the circuit court's order denying his Hawaiʻi Rules of Penal Procedure (HRPP) Rule 40 petition for post-conviction relief. For the following reasons, we vacate the circuit

court's order and remand for further proceedings.

## I.

Garringer conceded at trial that he and a minor accomplice (Minor) planned to commit theft at a Jack-in-the-Box restaurant in Waipi'o Gentry. Garringer accompanied the Minor to the restaurant's drive-through window, where the Minor threatened Robert Pointer with a shotgun and demanded money. The Minor pounded the shotgun on the counter and it went off, killing Pointer.[1] Garringer then grabbed the money from the cash register and the two men fled in a car stolen by Garringer prior to the robbery.

Garringer was convicted, inter alia, of multiple counts relevant to the instant appeal: Robbery in the First Degree pursuant to Hawai'i Revised Statutes (HRS) § 708–840(1)(b)(ii) (1993) (Count I);[2] Possession of Prohibited Firearm pursuant to HRS § 134–8(a) (Count IV) (Supp.1994);[3] Possession of Firearm by a Person Convicted of Certain Crimes pursuant to HRS §§ 134–7(b) and (h) (Supp.1994) (Count V);[4] and Place to Keep Loaded Firearm pursuant to HRS §§ 134–6(a) and (d) (Supp.1994) (Count VI).[5] He was sentenced to the following terms of incarceration, "to be served concurrently with all other terms presently being served": life imprisonment with the possibility of parole and a mandatory minimum term of six years and eight months on Count I; five years in prison with a mandatory minimum term of one year and eight months on both Counts IV and VI; and ten years in prison with a mandatory minimum of three years and four

1. The Minor testified that Garringer supplied the shotgun and the ammunition, as well as a handgun that was left in the getaway car because it did not work properly; the Minor also indicated that they originally intended to use the shotgun merely to blow out the window and gain access to the cash register. Garringer denied having any prior knowledge of the shotgun.

2. HRS § 708–840(1)(b)(ii) provides in pertinent part that "[a] person commits the offense of robbery in the first degree if, in the course of committing theft ... [t]he person is armed with a dangerous instrument and ... [t]he person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property." Amendments made effective subsequent to Garringer's conviction are not relevant to this appeal.

3. HRS § 134–8(a) provides in pertinent part that "[t]he ... possession, ... transfer, or acquisition of the following is prohibited: ... shotguns with barrel lengths less than eighteen inches.... Any person violating [this sub]section shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation." Amendments made effective subsequent to Garringer's conviction are not relevant to this appeal.

4. HRS § 134–7 provides in pertinent part that:

(b) No person who is under indictment for, or who has waived indictment for, or has been bound to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

....

(h) Any person violating subsection ... (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony.

Amendments made effective subsequent to Garringer's conviction are not relevant to this appeal.

5. HRS § 134–6 provides in pertinent part:

(a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection where the separate felony is ... [a] felony offense otherwise defined by this chapter....

....

(d) It shall be unlawful for any person on any public highway to carry on the person, or to have in the person's possession, or to carry in a vehicle any firearm loaded with ammunition; provided that this subsection shall not apply to any person who has in the person's possession or carries a pistol or revolver and ammunition therefor in accordance with a license issued as provided in section 134–9.

Although the legislature amended HRS § 134–6 to specifically exclude certain enumerated felonies as the basis for an HRS § 134–6(a) charge, see Act 239, § 1, 1993 Haw.Sess.Laws 239, "[t]he legislature specifically provided that the amendment was not to affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date June 18, 1993. Other amendments not material to the present appeal have also been enacted." *State v. Israel*, 78 Hawai'i 66, 68 n. 1, 890 P.2d 303, 305 n. 1 (1995) (internal quotation marks, brackets, and citations omitted).

months on Count V.[6]

In an earlier appeal, in connection with which Garringer was represented by substitute counsel, we affirmed the sentences imposed by the circuit court despite Garringer's claim that the court abused its discretion in sentencing him to an extended life term of imprisonment under HRS § 706–662(4). *State v. Garringer*, 73 Haw. 624, 827 P.2d 1148 (1992) (Table). Garringer subsequently filed a *pro se* HRPP Rule 40 petition for post-conviction relief on August 3, 1993. The circuit court denied his petition without a hearing.

## II.

### A.

Garringer argues that: 1) the indictment did not fairly notify him that he could face sentencing enhancement under HRS § 706–660.1 (1993) [7] based upon the aggravating circumstance of using a firearm in the commission of a felony; and 2) there was insufficient evidence that he used a firearm in the commission of a felony—i.e., enhanced sentencing under HRS § 706–660.1 may not be premised upon a finding of accomplice liability.

#### 1.

■ In *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994), we stated that "an indictment must be read in a common-sensical fashion in order to ascertain whether the material aggravating circumstance has been sufficiently alleged therein to support the imposition of enhanced sentencing." *Id.* at 530, 880 P.2d at 205. Respectively, Counts I, IV, V, and VI of the indictment in the instant case alleged that on or about December 30, 1989: "[Garringer] and [his co-defendant], while in the course of committing theft, and

while *armed with a dangerous instrument*, did threaten the imminent use of force against [Pointer], a person who was present, with the intent to compel acquiescence to the taking of or escaping with the property" (emphasis added); "[Garringer] did possess, transfer, or acquire a *shotgun* with a barrel length less than eighteen inches" (emphasis added); "[Garringer] did own, possess, or control a firearm"; and, finally, "[Garringer] did carry or possess a loaded firearm and did fail to confine said firearm[.]"

■ Although Counts IV through VI do not allege that Garringer either used or threatened to use a firearm, mere possession thereof is sufficient for the purposes of HRS § 706–660.1. *See supra* note 7. To the extent that a firearm was employed in the robbery, the circuit court correctly held that Garringer "was on notice that the charges against him included the *use* of a firearm." (Emphasis added). In any event, the court did not impose mandatory minimum terms of imprisonment for these counts under HRS § 706–660.1. *See supra* note 6. Furthermore, we are convinced that a plain reading of the robbery count must result in the conclusion that the possession of a shotgun—i.e., the relevant aggravating circumstance supporting the imposition of enhanced sentencing—was being charged. *See Schroeder*, 76 Hawai'i at 530, 880 P.2d at 205. Thus, we hold that Garringer was on notice that the charges against him included the possession of a firearm.

#### 2.

■ Garringer next argues that there was insufficient evidence in the record to support enhanced sentencing with respect to Count I because he never actually possessed the shotgun during the robbery. The prosecution

---

**6.** The sentencing court imposed the mandatory minimum term associated with Count I under HRS § 706–660.1 (1993), whereas the mandatory minimum terms associated with Counts IV, V, and VI were imposed under HRS § 706–662(4) (1993) based on Garringer's status as a multiple offender.

**7.** HRS § 706–660.1(1) provides in pertinent part: "[A] person convicted of a felony, where the person had a firearm in the person's posses-

sion or threatened its use or used the firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows: ... (b) [f]or a class A felony—up to ten years[.]"

responds that Garringer's liability as an accomplice justified the imposition of an enhanced sentence.

The sentencing court, which also presided over the trial in the instant case, found that the evidence:

clearly show[ed] that [Garringer] did aid and abet [the Minor] on December 30, 1990, in the commission of the felony at the Jack in the box [sic]. At the time [the Minor] was in possession of a shotgun which was used to cause the death of Pointer.

And it must have been clear to [Garringer] as his course of conduct as an accomplice did result in the use of that shotgun and his accomplice liability did not terminate prior to the time of *his use by [the Minor]* on the record made at the time of the trial.

I have been provided and shall find that beyond a reasonable doubt as a matter of fact that [Garringer] while engaged in the commission of that Class A felony did have it in his possession and used and threatened the use of a shotgun, a firearm, within the meaning of HRS [§] 706–660.1 beyond a reasonable doubt.

(Emphasis added.)

The sentencing court appears to have held Garringer legally responsible under HRS § 706–660.1 by imputing possession of the shotgun to him based on the actual possession and "use by [the minor]" during the robbery, as opposed to any actual or constructive possession by Garringer during the crime or while fleeing from the crime scene. The following exchange took place after the court made its findings:

[Defense]: Your Honor, if I may and this is with all due respect to what the Court has just stated as its findings. The legislature did not state specifically in this statute that an accomplice liability person who is considered an accomplice should, in fact, fall under this statute.

THE COURT: That is true.

[Defense]: And this statute is designed to presume from the Court its discretion. And all of these statutes which remove from the Court's discretion are specific as to whether they should be applied.

And I would argue to the Court that when a person is considered an accomplice and really the evidence shows that Mr. Garringer only knew of the weapon at the time when [the Minor] pulled it out with his hands. So he had no ability to at that point to be an accomplice to the Robbery.

The plan as he stated on the record for them to commit a theft—a robbery accomplice after the fact when the gun was brought out. So with that I would argue to the Court I can't see where the Court can find that he had it in his possession, threatened its use.

THE COURT: I think that as I—as I had indicated and that I agree with you that the language of 706–660.1 does not possess a cover in a [sic] commission of such felony with a firearm, but I think it must, the accomplice liability in 706–660.1 that that section maybe applicable to an accomplice on the *general scheme of the penal legislation as it embraces in our [Hawai'i] Penal Code* [sic] it has to be so if one can be punished as an accomplice then he can be punished as an accomplice in the course of the commission of the felony which in the—while in the possession of a firearm it has to be that way *because none of the other laws with respect to accomplice liability carries out a sentence in 706–660.1 to witness [sic] accomplice.*

[Defense]: Your Honor, just to be clear then the Court is making its findings and basing its findings of beyond a reasonable doubt as to the elements of 706–660.1 in the fact that Mr. Garringer was convicted as an accomplice to [the Minor], but not that [he personally had] any physical control of the weapon or threatened its use.

THE COURT: No, to the extent that he is convicted as an accomplice *and to the extent that he acted as an accomplice in possession of* [the shotgun] as well as [the Minor, he] was in deed [sic] in possession of [the shotgun]. Garringer was be [sic, presumably 'by'] operation of law.

[Defense]: Your Honor, therefore, as to the amount of time, I believe that it is—it could be discretionary with the Court as to

the amount of mandatory time, I would request the Court for the maximum which is ten years. And the fact that, one, he was, as the Court has said, sentenced as an accomplice to [the Minor].

The State chose to trade away their ability to seek 15 years of mandatory time for this specific statute from [the Minor] in exchange for his testimony and his plea bargain. He was charged with Murder in this case.

. . . .

I would ask the Court not to give him the ten years, but to make it perhaps five years.

THE COURT: Argument against?

[Prosecution]: Yes, the State based on the facts in this case and Mr. Garringer's role in the commission of the Robbery which resulted in the death of Robert Pointer feels that we didn't trade anything away for [the Minor's] . . . participation and testimony in this trial.

The State's position is that Mr. Garringer being the adult is much more culpable for his role in the planning and commission of the Robbery, therefore, we feel he, if anybody, deserves a greater sentence than a juvenile, that's why we feel that it's justified for asking the full ten years in this case.

When you consider that fact that Mr. Garringer was on probation and had been given two chances already on probation and has committed another pending crime for which he is here today for the sentence of the [Unauthorized Control of a Propelled Vehicle]. You consider all of the circumstances in this case, the mandatory

sentence of ten year jail is appropriate and necessary in this case. Thank you.

THE COURT: I'm going to take it under advisement until I've heard all matters and that shall be ruled upon this morning.

(Emphases added.)

The imposition of a mandatory minimum term of imprisonment pursuant to a conviction premised on accomplice liability is neither explicitly permitted nor prohibited by the language of HRS § 706–660.1(1). Neither does the legislative history of this statute provide us with clear guidance.[8] Faced with similar circumstances in *State v. Kumukau*, 71 Haw. 218, 787 P.2d 682 (1990), we gave a broad interpretation to HRS § 706–660.1, thereby permitting imposition of consecutive mandatory minimum terms of imprisonment notwithstanding the absence of explicit authority for such action under the statute. *See id.* at 223–26, 787 P.2d at 686–87. However, we relied heavily upon HRS § 706–668.5 (Supp.1992), which clearly permits the discretionary imposition of consecutive terms of imprisonment. *Id.* at 224, 787 P.2d at 686. In the instant case, the prosecution does not cite, nor are we aware of, any provision in the Hawai'i Penal Code that explicitly permits the imposition of an enhanced sentence—as opposed to a finding of guilt, *see supra* note 8—based upon principles of accomplice liability.

■ There is no doubt that the theory of accomplice liability applies where the use or possession of a firearm is an element of the offense or a separate offense even though the defendant did not engage in the requisite

---

8. The purpose of [House Bill 3196–76] is to set a schedule of mandatory sentences for a person convicted of a felony, where *the person had* a firearm in his possession and threatened its use or used the firearm while engaged in the commission of a felony. Your committee intends to require the court, *in the cases of felonies where a firearm was used,* to impose a mandatory term of imprisonment.

Your committee is in agreement that *the steadily increasing use of firearms in the commission of criminal activities presents a severe degree of risk of injury to victims of criminal actions.* At the present time your committee feels there is a need to re-examine the methods

with which to *discourage the use of firearms and institute strong criminal penalties for persons convicted of such criminal activities.*

. . . .

Your committee by this bill and the amendments thereto, intends to require the court in cases of felonies where a firearm was used to impose a mandatory term of imprisonment. Hse.Conf.Comm.Rep. No. 35, in 1976 House Journal, at 1143–44 (emphases added); *see also* Sen.Conf.Comm.Rep. No. 34, in 1976 Senate Journal, at 883–84.

HRS § 706–660.1 was amended in 1987 so that it applied "whether the firearm was loaded or not, and whether operable or not[.]" 1987 Haw.Sess.L.Act 260, § 1 at 814.

conduct.[9] The question that we must consider in this case is whether the law of accomplice liability renders Garringer liable for the mandatory penalties within the scope of HRS § 706–660.1.

The Alaska Court of Appeals addressed a similar query in *Dailey v. State*, 675 P.2d 657 (Alaska App.1984). After a jury trial, Dailey and a co-defendant were convicted, inter alia, of armed robbery, which is a class A felony under Alaskan law; they were both sentenced to six year presumptive terms of imprisonment for that crime. At trial, the victim testified that the codefendant held him at gunpoint in the living room of a friend's house while Dailey stole several items from other parts of the house. Dailey contended on appeal that the trial court erred in sentencing him to the six year presumptive term because the victim testified that he never saw Dailey with a gun in his possession. At the time, Alaska's relevant enhanced sentencing statute provided in pertinent part that:

[a] defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms ... if the offense is a first felony conviction, other than for manslaughter, *and the defendant possessed or used a firearm* or caused serious physical injury during the commission of the offense, six years.

*Id.* at 658–59 (citation omitted) (emphasis added in original).

After distinguishing the prosecution's citation to an opinion by the Alaska Supreme Court,[10] and observing that the decisions of courts in other jurisdictions provided "no clear cut answer[,]" *see id.* at 659–61, the Court of Appeals concluded that the statute:

should be construed to apply only to a defendant who personally uses or possesses a firearm during the commission of an offense. That certainly is the plain language of the statute and the statute could have been easily written to apply to an accomplice.... We believe that the legislature could rationally have intended this result. The defendant who personally possesses or uses a firearm or personally causes serious physical injury would normally be fully responsible for those actions. *His accomplice could very well have a lesser level of responsibility. For instance the accomplice might not know that his partner planned to use a gun. Therefore, for sentencing purposes, there might be a reason to treat a defendant more severely who personally uses a gun or personally causes serious physical injury. The revised criminal code is flexible enough to allow an accomplice who did not personally possess or use a firearm to receive the same sentence as a co-defendant who personally possessed or used a firearm if the same sentence is justified.*

*Id.* at 661 (emphasis added).[11]

Applying the court's rationale in *Dailey* to the instant case, we hold that HRS § 706–

**9.** HRS title 37 (1993) of the Hawai'i Penal Code provides in pertinent part that "[a] person is guilty of an offense if it is committed by his [or her] own conduct or by the conduct of another person for which he [or she] is legally accountable, or both[;] ... [for example, if he or she] is an accomplice of such other person in the commission of the offense[,]" *see* HRS § 702–221(2)(c), and that "[a] person is an accomplice of another person in the commission of an offense if ... [w]ith the intention of promoting or facilitating the commission of the offense, the person ... [a]ids or agrees or attempts to aid the other person in planning or committing it[.]" HRS § 702–222(1)(b). The record clearly demonstrates that Garringer aided the Minor in committing robbery. Furthermore, there is no evidence that Garringer "terminate[d] his complicity prior to the commission of the offense and ... [either w]holly deprive[d] his complicity of effectiveness in the commission of the of-

fense[,] or ... [gave] timely warning to the law enforcement authorities or otherwise [made a] reasonable effort to prevent the commission of the offense." HRS § 702–224(3).

**10.** *See Rice v. State*, 589 P.2d 419 (Alaska 1979). The defendant in *Rice* was also convicted of armed robbery based upon his accomplice's use of a firearm; however, he was sentenced to the minimum term for an offense involving the use of a firearm—i.e., a "separate statute crime to which the principles of accomplice liability applied." *Dailey*, 675 P.2d at 659 (citing *Rice*, 589 P.2d at 420, for the proposition that "Alaska has abolished the common law distinction between accessories and principals to a crime").

**11.** *See* HRS § 702–226 (1993), which provides:

When, pursuant to any section from section 702–221 through 702–223, two or more per-

660.1(1) must be interpreted, absent definitive legislative history to the contrary, to preclude the imposition of enhanced sentencing with respect to Garringer's conviction of robbery where he did not personally possess, threaten to use, or use a firearm while engaged in the commission of that felony.[12] *Contra Battle v. United States,* 515 A.2d 1120 (D.C.App.1986).[13] Therefore, even if Garringer is unable to demonstrate ineffective assistance of counsel on remand, *see infra* section II.B., he is entitled to be resentenced with respect to his conviction of robbery as charged in Count I.

■ On remand, the sentencing court is not empowered to make the necessary finding that Garringer actually or constructively possessed the shotgun during the robbery. *See Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203 (distinguishing the court's power to make findings concerning "historical facts" under *State v. Huelsman,* 60 Haw. 71, 588 P.2d 394 (1978), *reh'g denied,* 60 Haw. 308, 588 P.2d at 407 (1979), from the rule under *State v. Estrada,* 69 Haw. 204, 738 P.2d 812 (1987), that where the aggravating circumstances required under an enhanced sentencing statute are *intrinsic* to the commission of the crime charged, they must be determined by the trier of fact). Therefore, following the procedure used by the court in *United States v. Garcia,* 37 F.3d 1359, 1370–71 (9th Cir. 1994), we withhold judgment on Garringer's conviction of Count I for thirty days. If the prosecution within that time consents to resentencing without a mandatory minimum under HRS § 706–660.1, we will affirm the conviction on that count and remand for re-

sons are liable for an offense which is divided into degrees, each person is guilty of the degree of the offense which is *consistent with the person's own state of mind and with the person's own accountability for an aggravating fact or circumstance.*
(Emphasis added.) This section represented a "sorely-needed correction of [Hawai'i] law[,] which has been interpreted to require, in the case of an accomplice, not only that the defendant stand in the same shoes as the person for whose conduct the defendant is accountable, but that the defendant be held to think the same thoughts." Commentary to HRS § 702–226 (1993) (referring to *State v. Shon,* 47 Haw. 158, 385 P.2d 830 (1963), which interpreted RLH (1955) § 252–4, subsequently HRS § 704–4, and later repealed by 1972 Haw.Sess.Laws Act 9, at 139). *See also* 1972 Haw.Sess.Laws Act 9, at 140 (repealing, inter alia, the "felony murder" provisions of HRS §§ 748–1, which had established an alternative means of proving murder where a victim was accidentally killed during the commission of a felony).

12. The dissent's reliance on *State v. Alexander,* 184 N.J.Super. 615, 446 A.2d 1257 (Law Div. 1981), is misplaced because New Jersey is a "felony murder" state. *See supra* note 11. Furthermore, in holding that the legislature implicitly intended to apply enhanced sentencing to defendants convicted on the basis of accomplice liability, the *Alexander* court relied on New Jersey's history of sentencing accomplices to additional sentences based upon a fifty-year-old statute that authorized additional sentences for armed criminals. 446 A.2d at 1261.

13. In *Battle,* a co-defendant named Diaz was convicted of kidnapping while armed and two counts of assault with intent to commit the offense of kidnapping while armed. The testimony at trial indicated that while Diaz temporarily acquired a gun from Battle during the kidnapping of the victim in the first count, he did not possess the gun during the subsequent assaults of other victims. The court held that Diaz could, nevertheless, be subjected to enhanced sentencing based upon accomplice liability because:

[t]here is no indication in the D.C.Code, or any case law of this jurisdiction, to suggest that the principles enunciated in section 22–105 [i.e., accomplice liability] do not apply to enhance the sentence of an aider and abettor who assists an armed principal. *The purpose for which D.C.Code § 22–3202 [i.e., the relevant enhanced sentencing statute] was designed—to deter the increasing number of armed crimes within the District—would not be served by imposing lesser sentences on aiders and abettors of armed principals.*

*Id.* at 1128 (emphasis added). *See also State v. White,* 98 N.J. 122, 484 A.2d 691 (1984) (affirming the imposition of an enhanced sentence where the defendant planned that the robberies be effected by an accomplice with the use of a handgun); *State v. Holmes,* 451 So.2d 1175 (La. App. 1st Cir.1984) (permitting enhanced sentencing based on imputed possession because, under Louisiana law, co-conspirators are deemed to assent or commend whatever is done to further the common enterprise); *Key v. State,* 563 S.W.2d 184 (Tenn.1978) (holding that an unarmed participant had joint possession of a firearm through knowledge of possession by his partner). *Compare People v. Reed,* 185 Cal.Rptr. 169, 135 Cal.App.3d 149 (1982), (holding that, absent legislative intent to impose derivative liability, enhanced sentences based on the use of a weapon during a crime may not be imposed on defendants who were not personally armed), *with People v. Tung Thanh Le,* 200 Cal.Rptr. 839, 154 Cal.App.3d 1 (App. 4th Dist.1984) (disagreeing with the holding in *Reed* ).

sentencing. If, on the other hand, the government does not consent, we will vacate Garringer's conviction on Count I and remand for a new trial. In order to avoid this problem in future cases, the circuit court should instruct the jury, by special verdict interrogatories, to make any and all findings relevant to the imposition of enhanced sentences where the requisite aggravating circumstances are intrinsic to the commission of the crime charged.

### B.

■ Based on our resolution of the issues discussed in sections II.A.1. and 2., *supra*, we need not address Garringer's claim that both his trial and appellate counsel provided ineffective assistance with respect to the issue of sentencing. However, Garringer also contends, inter alia, that his trial counsel provided ineffective assistance with respect to his defense of temporary insanity and that the circuit court should have permitted him to amend his pleadings to demonstrate trial counsel's ineffectiveness.[14]

■ Without holding a hearing, the circuit court determined that Garringer did not demonstrate actual prejudice to support his claim of ineffective assistance. However, HRPP Rule 40(e) (1994) provides:

**Amendment or withdrawal of petition.** The court may grant leave to amend or withdraw the petition at any time.

Amendment shall be freely allowed in order to achieve substantial justice. *No petition shall be dismissed for want of particularity unless the petitioner is first given an opportunity to clarify the petition.*

(Emphasis added.) In *Stanley v. State*, 76 Hawai'i 446, 879 P.2d 551 (1994), we observed that:

[a]lthough Appellant was *pro se* when he filed his petition and "should not suffer for his inability to articulate his claims[,]" Appellant, as a *pro se* petitioner, still must alert the court to the general issue that is the basis of his claim of ineffective assistance of counsel. *Bryant v. State*, 6 Haw. App. 331, 335, 720 P.2d 1015, 1019 (1986) (*disapproved on other grounds* in *Briones v. State*, 74 Haw. 442, 460–461 n. 11, 848 P.2d 966, 975–76 n. 11 (1992)). In *Bryant*, although the petitioner failed to "specify as a ground for relief the precise factual basis" upon which his appeal was based in his original petition, he subsequently amended his petition and clearly raised the factual issue that served as the substance of his ineffective assistance of counsel claim. *Id.*

*Stanley*, 76 Hawai'i at 449–50, 879 P.2d at 555. In the instant case, Garringer alerted the court that one of his ineffective assistance of counsel claims concerned the "insanity" defense. *See, e.g.*, HRS § 704–400 (1993); HRS § 702–230 (1993) ("pathological intoxication" exception).[15] Therefore, under

---

**14.** Specifically, Garringer's HRPP Rule 40 petition alleges ineffective assistance of trial counsel with respect to counsel's failure to: 1) sever trials; 2) plead temporary insanity due to effects of drug usage; 3) object to improper prosecutorial allegations and statements; 4) obtain a psychiatric evaluation prior to trial; and 5) properly research the case and examine witnesses. We agree with that portion of the circuit court's order rejecting the first and third grounds for Garringer's claim of ineffective assistance of counsel; the remaining three grounds are all related to his defense of temporary insanity. In response to the prosecution's argument that he waived this ineffective assistance of counsel claim by failing to address the issue on direct appeal, Garringer asserts that "appellate counsel failed to comply with [his] request to appeal various issues ... [and] failed to research the case properly before filing the appeal." Furthermore, "failure to raise [such an issue] specifically in the petition does not *per se* defeat the possibility of obtaining relief on that ground in the Rule

40 proceeding. Waiver in such circumstances can only be lodged against the petitioner when it may be inferred from an examination of the entire record." *Bryant v. State*, 6 Haw.App. 331, 334, 720 P.2d 1015, 1018 (1986).

**15.** HRS § 704–400 provides:

**Physical or mental disease, disorder, or defect excluding penal responsibility.** (1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of the physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

(2) As used in this chapter, the terms "physical or mental disease, disorder, or defect" do not include an abnormality manifested only by repeated penal or otherwise anti-social conduct.

Although a person who voluntarily introduces a substance into his or her body and becomes

HRPP Rule 40(e), Garringer should have been given the opportunity to clarify his petition by amending it to include specific factual allegations relevant to his claim.[16]

Specifically, Garringer must establish "that (1) his appellate counsel omitted an appealable issue, and (2) in light of the entire record, the status of the law, and the space and time limitations inherent in the appellate process, a reasonably competent attorney would not have omitted that issue." *Domingo v. State*, 76 Hawai'i 237, 242, 873 P.2d 775, 780 (1994).[17] *See also State v. Tyrrell*, 60 Haw. 17, 31, 586 P.2d 1028, 1036 (1978) (indicating that defense counsel's decision not to subject client to the rigors of a mental examination is not unreasonable on its face). "Because appellate courts do not ordinarily consider evidence outside the record, a postconviction proceeding is the most appropriate forum in which to resolve ineffective assistance claims." *Raines v. State*, 79 Hawai'i 219, 223, 900 P.2d 1286, 1290 (1995); *see also State v. Silva*, 75 Haw. 419, 439, 864 P.2d 583, 592 (1993) (acknowledging "that not every trial record is sufficiently developed to determine whether there has been ineffective assistance of counsel"). Therefore, if the prosecution chooses not to retry Garringer on Count I and accepts the imposition of a sentence without a mandatory minimum under HRS § 706–660.1, we remand this case to the circuit court for an HRPP Rule 40 hearing to determine the merits of Garringer's remaining ineffective assistance of counsel claim. *See supra* note 14.

### III.

For the foregoing reasons, we affirm in part and vacate in part the circuit court's order denying Garringer's HRPP Rule 40 motion and remand, at the option of the prosecution, for retrial (in which case Garringer's Rule 40 petition becomes moot) or for resentencing on his conviction of robbery and for an HRPP Rule 40 hearing on the

---

intoxicated is generally responsible for his or her actions, *see* HRS § 702–230 (Supp.1992), "[i]ntoxication which ... is pathological is a defense if by reason of such intoxication the defendant at the time of the defendant's conduct *lacks substantial capacity either to appreciate its wrongfulness or to conform the defendant's conduct to the requirements of law.*" HRS § 702–230(4) (emphasis added).

16. Notwithstanding the prosecution's argument that Garringer could not show that the pathological intoxication defense applies to him and that his counsel's failure to obtain a psychiatric evaluation prior to trial or for sentencing did not constitute ineffective assistance, we observe that at least one defendant has been acquitted of second degree murder by successfully asserting the defense of pathological intoxication based on mental illness induced or exacerbated by chronic use of "ice," or crystal methamphetamine. *See State v. Kuhia*, Cr. No. 93–0158 (1st Cir.Haw., Sept. 29, 1994) (defendant acquitted by virtue of affirmative defense of pathological intoxication by a preponderance of the evidence). Nevertheless, given the state of the record, Garringer must overcome significant hurdles in order to establish that such a defense was potentially meritorious and that a reasonably competent attorney would not have omitted that issue. *See infra* note 17 and accompanying text.

Garringer testified at trial that he had been using "ice" almost every day for about two years. He and the Minor voluntarily smoked ice before the robbery and planned a theft of Jack-in-the-Box after running out of drugs. Garringer also testified that when he and the Minor previously "did ice" together, they would talk about committing robberies but never followed through on the talk. Finally, Garringer testified that, despite feeling the symptoms of withdrawal during the incident in question, he *had control over what he was doing*. The defense strategy was to blame the Minor; Garringer specifically argued that he was not blaming the drugs for what happened. The *Kuhia* court determined that the defendant suffered from pathological intoxication based upon the testimony of mental health experts, *as well as other corroborating evidence*, to the effect that he suffered from paranoid schizophrenia or organic delusional disorder. This disorder was either induced or exacerbated by chronic drug usage and substantially impaired his ability to conform his conduct to the requirements of law. Furthermore, Kuhia was not voluntarily intoxicated at the time he killed the victim.

17. Where "the 'appealable issue' raised is an action or omission of defendant's trial counsel, then that issue's 'applicability' should be determined using the full standard of review for the effectiveness of counsel's performance herein." *Briones*, 74 Haw. at 466 n. 14, 848 P.2d at 977 n. 14. "In order to establish the ineffectiveness of counsel at trial, a petitioner must show: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Domingo*, 76 Hawai'i at 241, 873 P.2d at 779 (internal quotation marks omitted).

question whether Garringer's counsel provided ineffective assistance with respect to his defense of temporary insanity.

NAKAYAMA, Justice, concurring and dissenting.

I concur with the majority opinion except as to part II.A.2. Because I believe that it is consistent with legislative intent to impose a mandatory term of imprisonment for individuals convicted of a felony in which a firearm was used, I would affirm the circuit court's denial of Appellant's petition filed pursuant to Hawai'i Rules of Penal Procedure Rule 40.

The majority opines that the legislative history does not provide a clear indication as to whether "accomplice liability" applies to HRS § 706–660.1(1).[1] Majority at 1147. I agree that, on its face, HRS § 706–660.1(1) does not impose enhanced sentencing on those convicted of accomplice liability; however, in viewing the legislature's intent of enhancing mandatory sentences in an effort to confront the "steadily increasing use of firearms in the commission of criminal activities," Majority note 8, I would hold that imposing enhanced sentences to those convicted of accomplice liability would be in accordance with the legislature's stated policy of frustrating the growing trend of crimes involving firearms. Accordingly, I would hold that the sentencing court did not err in sentencing Appellant to a minimum mandatory sentence pursuant to HRS § 706–660.1(1).

The majority concluded that, because there is no "definitive legislative history to the contrary," those convicted of accomplice liability should not be subjected to enhanced sentencing. I respectfully disagree.

The legislature's intent in enacting statutes that would deter the use of firearms in the commission of crimes is evidenced by HRS § 702–221(2)(c),[2] which, in combination with HRS § 708–840(1)(b),[3] permits an accomplice to be charged with robbery in the first degree, even though the accomplice was not armed with a dangerous instrument. This is consistent with the legislative history that firmly demonstrates the legislature's desire to reduce the growing number of crimes involving firearms. The absence of a statute imposing enhanced sentences on those convicted of accomplice liability should not prevent this court from following the legislature's pattern of creating barriers to thwart the increasing threat of criminals using firearms while engaged in the commission of a felony. Subjecting accomplices to enhanced sentencing, under the same criteria as those individuals in actual possession of a firearm, would be consistent with legislative intent. Accordingly, I would hold that, imposing enhanced sentences on those convicted of accomplice liability, is consistent with, and not contrary to, the legislature's policy of discouraging crimes involving firearms.

In reaching its holding, the majority searches for guidance from other jurisdictions, and primarily relies on *Dailey v. State*, 675 P.2d 657 (Alaska App.1984). However, I would hold that *State v. Alexander*, 184 N.J.Super. 615, 446 A.2d 1257 (Law Div. 1981), a case examined by *Dailey*, is more appropriate for our jurisdiction. In *Alexander*, the court held that an unarmed accomplice was subject to a mandatory term where a firearm was used or possessed during the commission of a crime. The court based its decision on the legislature's intent "to increase the penalties and, therefore, deter commission of serious crimes when accompanied by the use of firearms." Thus, even though New Jersey did not have a statute imposing enhanced sentences on those convicted of accomplice liability, the *Alexander* court followed the legislature's policy of enacting statutes to deter crimes involving firearms, and, consequently, imposed enhanced sentencing on accomplices.

The decisions in accord with *Alexander* include: *Battle v. United States*, 515 A.2d 1120 (D.C.1986) (unarmed defendant convicted of aiding and abetting armed person was subject to receiving enhanced sentence); *State v. Sanders*, 280 N.W.2d 375 (Iowa 1979) (unarmed aider and abettor was subject to receiving enhanced sentence); *Gammel v.*

---

**1.** *See* Majority note 7.

**2.** *See* Majority note 9.

**3.** *See* Majority note 2.

*State,* 259 Ark. 96, 531 S.W.2d 474 (1976) (unarmed accomplice was subject to receiving enhanced sentence); *State v. McKim,* 98 Wash.2d 111, 653 P.2d 1040 (1982) (unarmed defendant was subject to receiving enhanced sentence if state proved beyond a reasonable doubt that defendant knew other person was armed with a deadly weapon; circumstantial evidence was admissible to establish such proof); *People v. Stevens,* 32 Cal.App.2d 666, 90 P.2d 595 (1939).

I would hold that this court should interpret the statute to allow for enhanced sentencing in offenses involving accomplice liability.